FILED
2017 Nov-27  PM 02:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JACKI BECK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FINANCIAL TECHNOLOGY | ) | 7:16-cv-01845-LSC |
| CORP., *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF OPINION

The Court has before it Defendants' Rule 12(b)(6) Motion to Dismiss. (Doc. 20.) Plaintiff Jacki Beck ("Beck") brought this action alleging unpaid minimum wages and overtime violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as breach of contract, fraud, and unjust enrichment under Alabama state law. All Defendants, Financial Technology Corp ("FITECH"), Teachers 'N Tools, Inc. ("TNT"), Smart Data Strategies, Inc. ("Smart Data Strategies"), Marion Edwin Lowery ("Lowery"), Isaac A. Smith, II ("Smith"), move to dismiss Beck's FLSA claims against them because she has failed to state a valid claim for unpaid minimum wages, and all Defendants except FITECH move to be dismissed as party defendants because they lack the requisite

employer-employee relationship with Plaintiff. For the reasons below, the Motion to Dismiss is due to be GRANTED. (Doc. 20.)

## I.    Background[1]

Plaintiff, Jacki Beck, ("Beck") commenced this action on November 15, 2016, and defendants filed a motion to dismiss on December 12. In its July 17, 2017, Memorandum of Opinion and Order (doc. 18), the Court dismissed Plaintiff's claims under the FLSA for failure to state a claim, and her state law claims for lack of subject matter jurisdiction, giving Plaintiff leave to amend her complaint to avoid dismissal. Plaintiff filed her first amended complaint (doc. 19) within the ten (10) days proscribed by the Court's Order. Defendant's filed the pending motion to dismiss all claims in Plaintiff's first amended complaint on August 8, 2017. (Doc. 20.)

Beck was employed by Teachers 'N Tools, Inc. ("TNT") as a sales representative, selling retail products to school systems in the southeastern United States. Defendants Lowery and Smith purchased TNT and FTC-Teachers 'N Tools, Inc.  ("FTC-TNT") in 2013. Lowery and Smith made TNT a subsidiary of Financial Technology Corp. ("FITECH"). TNT appeared as an employer on

---

[1] At the motion to dismiss stage, the Court must accept the plaintiff's version of the facts as true, and "[construe] the reasonable inferences therefrom . . . in a light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). The following facts are, therefore, taken from Beck's allegations in her complaint, and the Court makes no ruling on their veracity.

Beck's W-2 form and also withheld taxes from Beck's paychecks in 2015. Lowery and Smith later made FTC-TNT an assumed name of FITECH. Lowery and Smith also own Smart Data Strategies ("SDS").

After purchasing TNT, Lowery and Smith retained Beck to sell products and services in exchange for an annual salary of $36,000, plus commissions on sales and renewals. Commissions were equal to 30% of the gross profit on any new software sales, 20% of gross profit on any renewals of software sales, and 25% of gross profits on all other sales. Beck was also guaranteed commission on all renewals of products or software originally sold by her. When Beck made a sale, Lowery would obtain the product to provide to the customer.

Beck was a competent employee, and was the top salesperson in 2014 and 2015. However, Defendants were routinely late in paying Beck, or simply did not pay her at all. Whether Beck was paid monthly or bi-monthly, the payments were made for the same amount. Beck alleges she was paid $38,125.32 for 2015 and $24,240.61 for the relevant part of 2016. Beck claims she is owed more than $32,797.10 in commissions for 2015, and $9,845.55 in commissions for 2016, amounting to approximately $42,642.65 in total unpaid commissions. In 2016, Lowery and Smith sent a letter to Beck purporting to change her salary and commission structure. Lowery also fired Beck's co-worker in 2016, and gave a raise to another co-worker around the same time. In 2015, Beck traveled

extensively and frequently worked more than forty hours per week. Beck personally incurred travel expenses because the firm credit card provided by Defendants was often declined. These costs included mileage and gas, hotel stays, food, and other expenses. Beck claims that a sum of approximately $155.86 for miscellaneous expenses has not been reimbursed. Beck also claims that she was enrolled in Defendants' group health plan, and Defendants paid a portion of her health insurance premiums. In 2015, Defendants lost the health insurance plan, but continued to deduct insurance premiums from Beck's paycheck totaling $2,277.00 over several pay periods. After losing health insurance, Beck incurred out-of-pocket medical expenses amounting to $964.03. Smith was involved in the decision of whether to reimburse Beck for improper insurance withholdings, in addition to the travel and medical expenses. Though Defendants promised to reimburse Beck for these expenses, they have not done so in full.

## II.   Standard

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to satisfy this standard, the complaint must also include "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id*. at 678 (internal quotations omitted).

*Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A party need not specifically plead each element in his or her cause of action, but the pleading must contain "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). The Court must construe pleadings broadly and resolve inferences in the nonmoving party's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

## III.   Discussion

### A. Employers

Defendants do not dispute that FITECH was Beck's employer during the relevant employment period. (Doc. 20 at 1.) Defendants TNT, Lowery, Smith, and SDS, however, move to dismiss the claims against them under Rule 12(b)(6). These defendants claim they had neither an employer-employee relationship nor a contract with Beck during the period relevant to her FLSA claim. In order to recover under the FLSA, a plaintiff must show that a defendant is her "employer" as defined by the FLSA. 29 U.S.C § 207(a)(1).  The FLSA broadly defines an employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C § 203(d). This analysis is broad and depends "on the circumstances of the whole activity." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir. 1973)).

Further, to employ means to "suffer or permit to work," and "[a]n entity suffers or permits an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (internal quotations omitted). This "economic reality" test considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4)

maintained employment records." *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) (citations omitted).

Beck alleges that TNT is a subsidiary of FITECH and that it was operated without a clear delineation from FITECH. Beck also claims that her W-2 Wage and Tax Statement lists TNT as her employer, and TNT also withheld income taxes from Beck's paychecks in 2015. TNT supervised and controlled Beck's condition of employment by ensuring that tax withholding requirements were met. These tax records likely became employment records that TNT maintained during its relationship with Beck. Lastly, because TNT operated as FITECH's subsidiary without clear delineation, it is reasonable to infer that during Beck's employment TNT would have been "acting directly or indirectly in the interest of [FITECH]." 29 U.S.C § 203(d). These facts are sufficient to plausibly show that TNT was Beck's employer under the FLSA.

Beck's allegations that Lowery and Smith were her employers are similar as they pertain to each Defendant and are sufficient to survive the motion to dismiss. After purchasing TNT, Lowery and Smith retained Beck as a sales representative. After retaining her, Lowery and Smith sent a letter to Beck purporting to change her salary and commission structure. They also showed control over Beck's itinerary and territory as a sales representative. When Beck made a sale, Lowery would take over the sale to obtain the customer's product and ensure the

finalization of the transaction. Beck's allegations that Lowery fired her co-worker in 2016, and gave a raise to another co-worker do not show that he had the power to fire her in particular, and thus he was not "acting [specifically] . . . in relation to [Beck]." 29 U.S.C § 203(d). However, the fact that Lowery had control over Beck's commission structure as well as the finalization of her sales shows that he could supervise and control Beck's conditions of employment, particularly because she would be paid a commission upon finalization of the sales. Thus, Beck's allegations are sufficient to bring Lowery under the FLSA's definition of employer.

The allegations against Smith are very similar to those made against Lowery. However, one important allegation attributed to Smith only is that he was involved in reimbursing Beck for improper insurance withholdings, as well as medical and travel expenses. This allegation, combined with those already addressed, suffices to support the inference that Smith was involved in Beck's conditions of employment, and determined how she would be paid through reimbursements. Additionally, Lowery and Smith as the sole owners of the companies, they are "employer[s] along with the corporation[s], jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986). For these reasons, Beck has pled sufficient facts to show Lowey and Smith are her employers under the FLSA.

Beck's allegations against SDS, however, are not sufficiently pled. The only allegation Beck makes is that SDS "paid Beck for services rendered to FITECH/TNT." (First Am. Comp. at 10). These allegations meet no single prong of the "economic realities" test and therefore fail to show how SDS acted "directly or indirectly . . . in relation to [Beck]." 29 U.S.C § 203(d).  For these reasons, SDS should be dismissed from the action.  In sum, Beck has pleaded sufficient facts to plausibly give rise to relief against TNT, Lowery, and Smith. SDS, however, should be dismissed as a party defendant.

### B. FLSA

### i.  Minimum Wage

A prima facie case of an FLSA violation requires a showing that "as a matter of just and reasonable inference . . . the wages paid to [Beck] did not satisfy the requirements of the FLSA." *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 475 n.12 (11th Cir. 1982). Under 29 U.S.C. § 206(a), an employer must pay an employee the federal minimum wage of $7.25 per hour worked during each workweek. The employer does not meet the FLSA minimum wage requirement by paying a cumulative annual salary that meets or exceeds the minimum wage, but the employer must adhere to this requirement for every pay period. *See Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1578 (11th Cir. 1985), *modified*, 776 F.2d 265 (11th Cir. 1985). For purposes of § 206, "the relevant pay period is

determined from the *actual pattern of payments* adopted by the parties." *Id.* at 1577 (internal quotations and citations omitted).   A pay period may be weekly, bi-monthly, monthly, or even longer. *Id.* at 1575. Additionally, late payments are not a prima facie violation of the FLSA unless they are unreasonably late. *Arroyave v. Rossi*, 296 F. App'x 835, 837 (11th Cir. 2008) (10 day delay between end of pay period and payday not deemed unreasonable).

In the case at hand, Beck was employed by Defendants as a sales representative. Her compensation consisted of an annual salary and commissions from sales and renewals. Although Beck alleges she was paid $38,125.32 for 2015 and $24,240.61 for the relevant part of 2016, she makes no allegations about her hourly pay other than for "some pay periods, Beck did not receive the minimum wage." (First Am. Comp. at 12.) This is the type of legal conclusion this Court is bound to disregard under *Iqbal*. Furthermore, Beck is unclear about whether her FLSA claim is based on Defendants' failure to pay monthly or bi-monthly wages.[2] Beck also claims that Defendants failed to pay her an amount specified in their employment agreement, and improperly withheld insurance payments for an inactive insurance policy. Defendants argue that Beck does not claim even one hour in which she was not paid at least minimum wage, and that any unpaid

---

[2] Beck claims that her employment agreement provided for "*bi-monthly* installments" but later states that "Defendants have failed to pay Plaintiff her *monthly* wages." (First Am. Compl. at 39, 45) (emphasis added).

commissions cannot be brought as a claim for unpaid minimum wages under §
206.

Beck correctly contends that § 206 requires employers to pay their
employees the minimum wage during each pay period, not cumulatively over the
course of a year. *Olson*, 765 F.2d at 1578. Beck, however, makes factual
allegations that include her wages for the entire year in 2015 and 2016. Beck
alleges that she was not paid "wages and guaranteed commissions for portions of
2015 and 2016." (First Am. Compl. at 12.) Beck's only allegations regarding a pay
period are that she "did not receive a timely paycheck on many pay periods during
2015 and 2016," that such paychecks were "routinely late and/or never paid," and
they were "extremely irregular." (*Id.* at 7.)  Beck fails to specify even one pay
period, whether weekly, bi-monthly, or monthly, in which Defendant's irregular
payments violated § 206.

In essence, Beck asks this Court to make a determination of whether
Defendants failed to pay the minimum wage during a particular pay period, but
only alleges facts showing her annual compensation, and none regarding a specific
pay period or an hourly pay. The mere fact that some payments were late does not
support the conclusion that the minimum wage was not paid during the pay period.
*Arroyave*, 296 F. App'x at 837. For these reasons, the Court cannot reasonably
infer from these facts that Defendants violated the minimum wage requirement of

the FLSA. Although Beck is not required to plead "detailed factual allegations," her allegations as pled are simply not "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

It is still conceivable that Defendants' failure to pay Beck during a given pay period would constitute a violation of § 206. If, for example, the parties had a strict bi-monthly payment arrangement, and Defendants paid Beck only once during a given month, the unpaid bi-monthly pay period would likely constitute a violation of § 206 because the employers failed to pay minimum wage for a given pay period. *Arroyave*, 296 F. App'x at 83 ("While the FLSA does not specify when payment of wages must be made . . . damages are available under the act to an employee if the employer failed to pay wages or overtime on the regular payment date."). Beck's allegations that she did not receive payment for some periods strikes at heart of the argument that paying no wage is an automatic violation of minimum wage. As pled in her complaint, however, Beck's allegations are conclusory because they are, in essence, a recitation of her argument that for some pay periods she was not paid the minimum wage. Put another way, Beck alleges that for some pay periods, Defendants violated § 206. The Court must disregard these legal conclusions when ruling on the Motion to Dismiss. *See Iqbal*, 556 U.S. at 679. Beck's claim does not cross the "line from conceivable to plausible," as required by the *Twombly* and *Iqcbal* pleading standard applicable to Rule 8(a)(2).

Even disregarding Beck's legal conclusions and assuming the veracity of the well-pleaded factual allegations, the Court is not convinced that Beck's complaint contains sufficient facts that "plausibly give rise to an entitlement to relief" for unpaid minimum wages under § 206. *Iqbal*, 556 U.S. at 679.

Beck's claim that her paychecks were for consistent amounts whether they were distributed monthly or bi-monthly is the allegation closest to stating a claim for relief for a minimum wage violation. In essence, Beck claims to have been compensated for only half the time for some pay periods. However, even assuming these allegations true, they are more likely apposite to a breach of contract claim, not a FLSA claim for minimum wage. If fact, Beck highlights the probability that these facts fit more closely to a breach of contract claim when she states in her claim for unpaid minimum wages that, "Defendants . . . violated the FLSA by failing to ensure that Plaintiff was paid regular wages and commission *as promised by Defendants*." (First Am. Compl. at 13) (emphasis added). A breach of contract claim is not cognizable under the FLSA. *See Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 806 (11th Cir. 1991).

Even after disregarding Beck's legal conclusions and assuming the well-pleaded factual allegations as true, the Court is not convinced that her amended complaint contains sufficient facts that "plausibly give rise to an entitlement to

relief" for unpaid minimum wages under § 206. *Iqbal*, 556 U.S. at 679. For these reasons, Beck's FLSA claim is due to be dismissed.

### ii. FLSA Overtime

Defendants argue that Beck's amended complaint does not include a properly pled claim for overtime pay. The FLSA designates that if an employee works more than forty hours in one week, the employer must pay the employee for those overtime hours at a rate of one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1); *see also Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013) ("[I]n order to state a plausible FLSA overtime claim "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours.") To establish a prima facie case for unpaid overtime, a plaintiff must show that (1) the defendant employed the plaintiff; (2) the defendant is covered by the FLSA; (3) the plaintiff actually worked in excess of a 40–hour workweek; and (4) the defendant did not pay Plaintiff any overtime wages. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1277 (11th Cir. 2008). The first two elements of the claim have been established by Beck's complaint. Regarding the last two, Beck has alleged that she

> Frequently worked in excess of forty hours per week as a result of extensive travel and sales trips in 2015. During any teaching software sales conferences, at least three to four weeks per year, Beck would work in excess of 40 hours per week just at those conferences, excluding any other sales or other work related activities in the week.

(First Am. Compl. at 7.) In *Sec'y of Labor v. Labbe*, 319 Fed.Appx. 761 (11th Cir. 2008), the Eleventh Circuit explained that:

> The requirements to state a claim of a FLSA violation are quite straightforward. The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act. *See* 29 U.S.C. §§ 206, 207, and 215(a)(2) and (5). There is no need to prove intent or causation that might require more extensive pleading.

*Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008) (citing *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005)). The panel in *Labbe* held that by simply alleging that "by failing to pay its employees applicable minimum wage" the defendant was in violation the FLSA, allowing the plaintiff to overcome a motion to dismiss. *Id.* at 762. However, *Labbe* was decided before the Supreme Court's ruling in *Iqbal*, and as an unpublished opinion is not binding on this Court. *See* U.S.Ct. of App. 11th Cir. Rule 36–2. In *Landers v. Quality Commc'ns, Inc.*, 711 F.3d 638, 644 (9th Cir. 2014), *as amended* (Jan. 26, 2015), *cert. denied*, 135 S. Ct. 1845 (2015), the Ninth Circuit noted:

> Although we agree with the Eleventh Circuit that detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim, we do not agree that conclusory allegations that merely recite the statutory language are adequate. Indeed, such an approach runs afoul of the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be discharged by "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action. . . " *Iqbal*, 556 U.S. at 678 (citations and internal quotations marks omitted).

*Landers*, 711 F.3d 638 at 644 (dismissing FLSA claims where the complaint lacked "any detail regarding a given workweek when [the plaintiff] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages.").

The Fourth Circuit in *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777, *appeal filed* (4th Cir. 2017), laid out the following standard:

> to make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours. Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay.

*Hall*, 846 F.3d at 777.

While Beck has alleged that she "frequently worked in excess of 40 hours per week" and provided the sales conferences she attended three to four times per year as specific examples of times she did so, she failed to allege that Defendants did not compensate her for those overtime hours. *See generally Morgan*, 551 F.3d 1233. The gravamen of Beck's complaint focuses on the fact that her salary payments were late, and she did not receive payment due on commissions. Thus, Beck has failed to allege facts sufficient to make a prima facie case for unpaid overtime wages under the FLSA. 29 U.S.C. § 207.

### iii.  FLSA Exemption

Additionally, the Court need not reach the issue of whether Beck was an "outside salesman" under 29 U.S.C. § 213(a)(1), and therefore exempt from the minimum wage requirement, because Beck has not pleaded sufficient facts to give her entitlement to relief for an alleged violation of § 206.

## C. State Law Claims

After dismissal of the FLSA claims, no federal claim remains. Plaintiff Beck, and Defendants Smith and TNT, are all alleged to be citizens of Alabama. Therefore, complete diversity does not exist. *See* 28 U.S.C. §1332. The Court declines to exercise supplemental jurisdiction over the state law claims, and those claims are due to be dismissed without prejudice. 28 U.S.C. §1367(c)(3); *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

## IV.    Conclusion

For the reasons stated above, Defendants' Motion to Dismiss is due to be GRANTED. Plaintiff's claims under the FLSA are due to be DISMISSED for failure to state a claim. Further, Plaintiff's state law claims are due to be DISMISSED for lack of subject matter jurisdiction. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on November 27, 2017.

L. Scott Coogler
United States District Judge

190685